United States District Court
Southern District of Texas
**ENTERED**
August 08, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **ETHAN ALLEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:24-cv-2129** |
| | § | |
| **FRANK BISIGNANO,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Ethan Allen ("Plaintiff") filed this lawsuit against Defendant Frank Bisignano (the "Commissioner") seeking review of the denial of benefits under Title XVI of the Social Security Act. (ECF Nos. 1, 7).[1] Pending before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 7, 9).[2] Based on a review of the motions, arguments, and relevant law, the Court **RECOMMENDS** the Commissioner's Motion for Summary Judgment (ECF No. 9) be **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion for Summary Judgment (ECF No. 7) be **GRANTED IN PART AND**

---

[1] Frank Bisignano was sworn in as the Commissioner of Social Security on May 15, 2025. Bisignano is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] On October 21, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 10).

**DENIED IN PART**.  The Court **FURTHER RECOMMENDS** the case be **REMANDED** for further administrative proceedings, consistent with this opinion.

## I.    Background

Plaintiff filed a claim for supplemental security income on October 7, 2020, alleging disability starting on October 2, 2020.  (ECF No. 3-1 at 31).[3] Plaintiff's claims were initially denied by the Social Security Administration on July 29, 2021, and again on reconsideration on November 7, 2022.  (*Id.*).  On November 18, 2022, Plaintiff requested a hearing before an Administrative Law Judge.  (*Id.*).  On September 14, 2023, Administrative Law Judge Michelle Whetsel (the "ALJ") held a telephonic hearing.  (*Id.*).  Plaintiff was represented by counsel at the hearing.  (*Id.*).  Thomas J. Meunier, a vocational expert ("VE"), also appeared at the hearing.  (*Id.*).

On October 17, 2023, the ALJ issued a decision, finding Plaintiff not disabled at Step Five.[4]  (*Id.* at 41).  At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 7, 2020, the

---

[3] The Administrative Record in this case can be found at ECF No. 3.

[4] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.  *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

application date. (*Id.* at 33). At Step Two, the ALJ found Plaintiff has the following severe impairments: "stroke with residual deficits, high blood pressure, vision disorder, vertigo, anxiety/depression/bipolar disorder (20 CFR 416.920(c))." (*Id.*). At Step Three, the ALJ found Plaintiff: "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (*Id.* at 34). The ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can lift 20 pounds occasionally, 10 pounds frequently, stand and walk for about four hours and sit for about six hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to extreme heat, extreme cold, fumes, dusts, odors, gases, poor ventilation, dangerous moving machinery, and wet, slippery, uneven surfaces. The claimant should avoid all exposure to unprotected heights. He can frequently reach in all directions, including overhead, bilaterally. The claimant can frequently handle and finger bilaterally. He can occasionally push, pull, and operate foot controls, bilaterally. The claimant can remember and follow simple instructions. He can perform the tasks assigned, but not at a production rate pace; however, he can meet the end of day work goals. The claimant can occasionally adapt to changes in the workplace.

(*Id.* at 35). At Step Four, the ALJ found Plaintiff "has no past relevant work." (*Id.* at 40). At Step Five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform—

such as a parking lot cashier, food and beverage order clerk, and final assembler—and therefore Plaintiff was not disabled as defined under the Social Security Act. (*Id.* at 40–41).

Plaintiff appealed to the Appeals Council who denied Plaintiff's request for review on March 15, 2024. (*Id.* at 6). Thus, the ALJ's decision represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

## II.   Legal Standard

The Court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "[R]eview of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*,

209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

## III.   Discussion

Plaintiff asserts three points of error. Plaintiff argues: (1) the ALJ erred in finding Plaintiff's impairments do not meet or equal the requirements of Listing 11.04; (2) the ALJ fails to properly evaluate the severity of Plaintiff's back impairments; and (3) the RFC finding is not supported by a medical

source of record and does not include the limiting effects of all of Plaintiff's impairments.   (ECF No. 7 at 6).   The Commissioner argues substantial evidence supports the ALJ's finding regarding Listing 11.04, the ALJ properly evaluated Plaintiff's back impairment, and substantial evidence supports the ALJ's RFC assessment.  (ECF No. 9 at 4–12).

### A.    Listing 11.04

Plaintiff argues the ALJ erred in finding Plaintiff does not meet or equal Listing 11.04.  (ECF No. 7 at 11).  Plaintiff claims he meets or equals the A and C criteria of Listing 11.04.  (*Id.* at 7).  The Commissioner contends the ALJ properly found Plaintiff's impairments did not meet the criteria for Listing 11.04.  (ECF No. 9 at 4).

"At step three, the Commissioner considers the medical severity of the claimant's impairment(s) and determines whether the impairment(s) meets or equals the criteria for a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Martin v. Colvin*, No. 1:16-cv-205, 2017 WL 2450288, at *2 (S.D. Miss. June 6, 2017) (citing 20 C.F.R. § 416.920(a)(4)(iii), (d)).  "The burden of proof to meet a listing is 'demanding and stringent.'"  *Id.* at *3 (quoting *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)).   "The responsibility for determining whether a claimant meets a listing is reserved to the Commissioner." *Id.* (citing 20 C.F.R. § 416.927(e)(2)).  "The ALJ has the burden to identify the relevant listed impairment [and] Plaintiff has the burden of

6

establishing that her impairment meets or equals an impairment set out in the Listing of Impairments." *Travis v. Berryhill*, No. 15-cv-3399, 2019 WL 1205161, at *6 (S.D. Tex. Mar. 14, 2019); *see Jordan v. Comm'r of Soc. Sec.*, No. 4:15-cv-026, 2015 WL 7283179, at *3 (N.D. Miss. Nov. 16, 2015) ("The plaintiff does indeed retain the burden of establishing that her impairments met or medically equal an impairment enumerated in the Listings.").

Listing 11.04 relates to vascular insult to the brain, which is met by criteria A, B, or C:

> A. Sensory or motor aphasia resulting in ineffective speech or communication (see 11.00E1) persisting for at least 3 consecutive months after the insult.
> OR
> B. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the insult.
> OR
> C. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a) and in one of the following areas of mental functioning, both persisting for at least 3 consecutive months after the insult:
> > 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> > 2. Interacting with others (see 11.00G3b(ii)); or
> > 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> > 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.04.

As to Listing 11.04, the ALJ found:

> [Plaintiff]'s stroke did not result in sensory or motor aphasia
> lasting for 3 consecutive months after the insult; or
> disorganization of motor function in two extremities resulting in
> an extreme limitation in the ability to stand up, balance while
> standing/ walking, or use the upper extremities; or a marked
> limitation in physical and mental functioning (Exhibits 17F-12, 8,
> 28; 11F-3, 4, 12; 7F-13).

(ECF No. 3-1 at 34).

First, Plaintiff argues the ALJ erred because Plaintiff meets or equals criteria A of Listing 11.04. (ECF No. 7 at 7-8). Criteria A requires "[s]ensory or motor aphasia resulting in ineffective speech or communication (see 11.00E1) persisting for at least 3 consecutive months after the insult." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.04(A). Here, Plaintiff was hospitalized on October 2, 2020, due to a stroke.[5] (ECF No. 3-1 at 37; ECF No. 7 at 8; ECF No. 9 at 5). Plaintiff finds issue with the ALJ's determination that "'there is no evidence the Plaintiff has experienced ongoing limitation in speech'" and argues the medical evidence contradicts the ALJ's findings. (ECF No. 7 at 8 (quoting ECF No. 3-1 at 39)). Further, Plaintiff argues any resolution of his speech was temporary. (*Id.* at 8–9).

The question turns to whether substantial evidence supports the ALJ's finding that ineffective speech or communication persisted for at least three consecutive months after the October 2, 2020 stroke. The ALJ and Plaintiff

---

[5] It is unclear whether Plaintiff had one stroke or multiple strokes. However, to be consistent, the Court will refer to it as a "stroke."

cite to record evidence to support their positions. For instance, the ALJ cites to Exhibit 11F at 3, 4, and 12, which are medical progress reports and examinations from November 2020 to March 2022, containing the notation, "PSYCH: alert, oriented, cognitive function intact, cooperative with exam, good eye contact, judgement and insight good, mood/affect full range, speech clear." (ECF No. 3-1 at 34, 704–742). The ALJ also cites to a June 2021 office visit at Absolute Pain and Wellness, in which Plaintiff had "no current complaints" and is "[d]oing well." (*Id.* at 37, 527). The ALJ notes that there were times Plaintiff's speech was limited but determined it was not ongoing and provides record evidence showing Plaintiff's speech was not impacted for three consecutive months. (*Id.* at 34–39, 399–400, 497, 759).

On the other hand, Plaintiff cites evidence that he had difficulty speaking and had slurred speech on October 2, 2020, that his slurred speech resolved temporarily on the same day, and then his speech impairment returned on October 14, 2020. (ECF No. 7 at 8–9). Plaintiff cites to a disability report dated October 14, 2020, where it was observed that Plaintiff "was a bit difficult to understand due to slurred, mumbled speech." (*Id.* at 9; ECF No. 3-1 at 276). The only other dates Plaintiff refers to regarding his "slowed and slurred speech" are March 16, 2021 and March 23, 2021. (ECF No. 7 at 9). These instances of slowed or slurred speech in October 2020 and March 2021 do not establish Plaintiff suffered ineffective speech or communication

9

persisting three consecutive months.  Further, Plaintiff fails to cite authority that stands for the notion that "temporary resolution" of ineffective speech or communication meets the requirement of Listing 11.04, criteria A.  As such, Plaintiff has not met his burden in establishing sensory or motor aphasia resulting in ineffective speech or communication persisting for at least three consecutive months after the insult.

Second, Plaintiff argues the ALJ erred because Plaintiff meets or equals criteria C of Listing 11.04. (ECF No. 7 at 9-10).  Criteria C requires a marked limitation in physical functioning and one in the area of mental functioning, including (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself, both persisting for at least three consecutive months after the insult. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.04(C). The ALJ found Plaintiff has a marked limitation in mental functioning as to understanding, remembering, or applying information.  (ECF No. 3-1 at 34). However, the ALJ did not find Plaintiff had a marked physical limitation. (*See id.*).  Accordingly, the Court must determine whether the ALJ's determination that Plaintiff does not have a marked physical limitation is supported by substantial evidence.

The ALJ's determination that Plaintiff does not have a marked physical limitation is supported by substantial evidence.  For instance, the ALJ cites to

certain portions of Exhibit 11F, which include general examinations of Plaintiff from November 2020 to March 2022. (ECF No. 3-1 at 34, 37).  The ALJ notes, "[t]he remainder of the claimant's treatment records are somewhat inconsistent, with only occasional signs of muscle weakness in the right extremities (Exhibits 11F-39, 27, 3 vs 17F-28, 16, 12, 8)", "in December of 2020, the claimant had a normal blood pressure and had full range of motion in all extremities with good strength in the upper and lower extremities. No deficits in strength were noted (Exhibit 11F-39)" and "[i]n Fact, the claimant's physical examinations from April 2021 through March of 2022 show normal strength in the upper and lower extremities, with good sensation and no reports of muscle weakness or unsteady gait (Exhibits 11F-27, 12, 3–4)." (*Id.* at 37).  The record the ALJ cites specifically states: "MUSCULOSKELETAL: full range of motion, no swelling or deformity. EXTREMITIES: no edema, full range of motion, no clubbing, cyanosis, or edema" and "NEUROLOGIC: nonfocal, motor strength normal upper and lower extremities, sensory exam intact." (*Id.* at 703–04).

Further, the ALJ notes "the use of the cane seems not to be medically necessary as there is no documented need and [Plaintiff] himself indicates there was no prescription provided for the cane.  Moreover, the evidence of record shows generally normal exam results regarding gait, ambulation, and muscle strength." (*Id.* at 36, 78).  The ALJ also notes Plaintiff's use of a cane decreased over time.  (*See id.* at 37 ("He reported he was using the cane less as

time went on.  For example, in February of 2023, the claimant reported he was using his cane less and was working out regularly (Exhibit 17F-12, 16).  By July of 2023, the claimant did not appear with the cane (Exhibit 17F-8).")).

Conversely, Plaintiff cites to evidence of physical limitation on the date of Plaintiff's stroke and in December 2020, March 2021, and May 2021.  (ECF No. 7 at 10).  However, Plaintiff has not met his burden in establishing a marked limitation in physical functioning persisting for at least three consecutive months after the stroke.[6]

To the extent Plaintiff argues the ALJ erred in not providing an explanation for the finding that Plaintiff's stroke did not result in a marked limitation in physical functioning, Plaintiff's argument fails.  Here, the ALJ

---

[6] To compare, aphasia and apraxia was found to persist for at least three months after a stroke under Listing 11.04(A) where, "Henry suffered a central nervous system vascular accident (a stroke) on or about December 7, 2004.  All of the medical records, from admission to the hospital to beyond the three-month duration period of the listing, show that Henry suffered from aphasia and apraxia as a result of his stroke."  *Henry v. Astrue*, No. 6:07-cv-01708, 2009 WL 928348, at *4 (W.D. La. Apr. 6, 2009).  The court specifically noted,

> On January 24, 2005, Dr. Kevin Hargrave, of Comprehensive Neurologic Center, recorded "motor aphasia."  (Tr. 154).  Henry continued speech therapy for several months.  A follow up examination at LSUMC on March 4, 2005, by the LSUMC Neurology clinic, noted "aphasia, apraxia" and instructed Henry to "continue speech therapy."  (Tr. 167).  Henry continued speech therapy for aphasia at LSUMC Speech Clinic through May 9, 2005, beyond the three month required period.  There is no record in the file showing that Henry was successfully discharged from speech therapy.

*Id.* at *5.  Further, a court found residual effects of a stroke did not meet Listing 11.04(b) where "the medical evidence fails to show significant and persistent disorganization of motor function in two extremities that resulted in sustained disturbance of gross and dexterous movements, or gait and station for more than three months after her stroke."  *Travis*, 2019 WL 1205161, at *7.

identifies Listing 11.04, cites to record evidence, and explains that Listing 11.04 was not met or equaled.  (ECF No. 3-1 at 34).  Although the ALJ could have provided a more in-depth and detailed analysis at Step Three, procedural perfection is not required.  *See Jordan*, 2015 WL 7283179, at *3.  Moreover, the ALJ provided a detailed discussion of Plaintiff's stroke and impairments following the stroke in the RFC analysis.  *See Martin*, 2017 WL 2450288, at *4 ("Here, even though the ALJ did not reference Listings 11.04 and 11.18 in her step three analysis, she did, in her RFC analysis, discuss an absence of evidence of lasting neurological impairment.").  As such, the Court finds the ALJ did not err.  *See id.* ("Not only did the ALJ not identify which Listing for which the plaintiff failed to qualify, [] but she wholly failed to discuss the evidence or provide any explanation whatsoever for how she reached her conclusion. This was clear error.").

Even so, Plaintiff has not established that such an error is not harmless. "[I]f the ALJ erred by failing to specifically address Listings 11.04 and 11.18, the error was harmless because Plaintiff has not shown that her substantial rights were affected."  *Id.* at *5 (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).  "To show that substantial rights were affected 'typically requires a claimant to demonstrate that his impairment satisfies the criteria of a particular listing.'"  *Id.* (quoting *Pickett v. Colvin*, No. 3:15-cv-700, 2017 WL 439978, *2 (S.D. Miss. Jan. 6, 2017), *report and recommendation adopted*, 2017

13

WL 422812 (S.D. Miss. Jan. 31, 2017)). Here, Plaintiff does not meet his burden in establishing he has an impairment under Listing 11.04. Specifically, Plaintiff fails to establish sensory or motor aphasia resulting in ineffective speech or communication persisting for at least three consecutive months after the stroke under Listing 11.04(A) and Plaintiff fails to establish a marked limitation in physical functioning persisting for at least three consecutive months after the stroke under listing 11.04(C). Further, the ALJ cites to record evidence that contradicts Plaintiff's assertions. *Cf. Jordan*, 2015 WL 7283179, at *4 ("According to the court, because no medical evidence had been introduced to contradict the diagnostic checklist findings, and because the ALJ had not offered any explanation to the contrary, the substantial rights of the plaintiff were affected by the ALJ's failure to provide her bases for her step three decision."). As such, even if the ALJ erred in her analysis, any error is harmless.

### B.   Back Impairment

Plaintiff argues the ALJ failed to properly evaluate the severity of Plaintiff's back impairments in determining the RFC. (ECF No. 7 at 11–13). The Commissioner asserts the ALJ properly considered Plaintiff's back pain. (ECF No. 9 at 8–9).

To the extent Plaintiff claims the ALJ erred at Step Two in not characterizing his back pain as a severe impairment, such error is harmless if

the ALJ considers Plaintiff's back pain in formulating the RFC. *See Moreno v. Comm'r of Soc. Sec. Admin.*, 698 F. Supp. 3d 935, 942 (W.D. Tex. 2023) ("For example, in a case considering an ALJ's mischaracterization of a severe fibromyalgia impairment as nonsevere, the court found the error was harmless 'because all impairments were considered in the ALJ's formulation of [the claimant's] RFC.'" (quoting *Enriquez v. Acting Comm'r of Soc. Sec. Admin.*, No. 3:17-cv-00329, 2018 WL 2293967, at *3 (W.D. Tex. May 18, 2018)). Because the ALJ does not mention Plaintiff's back pain at Step Two, the Court must determine whether the ALJ considered Plaintiff's back pain in determining the RFC. *See A.M. v. O'Malley*, No. 4:23-cv-1091, 2024 WL 758537, at *3 (N.D. Tex. Feb. 22, 2024) ("Even if Plaintiff is correct that the ALJ erred by failing to consider the Plaintiff's chronic pain syndrome to be a severe impairment, this does not end the analysis." (citing *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021)); *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) ("[T]he ALJ's failure to assess the severity of Herrera's anxiety or learning impairments at step two is not a basis for remand."). "'[I]f the ALJ proceeds past step two, we consider whether the error was harmless. . . . Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err.'" *Id.* (quoting *Keel*, 986 F.3d at 556).

Accordingly, the Court turns to the RFC analysis. In reviewing Plaintiff's complaints of back pain and the limiting effects of his back pain,

> the ALJ must consider all relevant evidence, including medical signs and laboratory findings, as well as the opinions of treating and non-treating medical sources, objective medical evidence, and other factors relevant to the claimant's symptoms, such as daily activities; location, duration, frequency and intensity of pain and other symptoms; and measures taken (such as medication, treatment or home remedies) to alleviate those symptoms.

*Christian v. Berryhill*, No. 4:15-cv-3714, 2017 WL 1134152, at *8 (S.D. Tex. Mar. 27, 2017). "While the Fifth Circuit does not require the ALJ to strictly follow these criteria when evaluating a Plaintiff's subjective claims of pain, an ALJ is still 'bound . . . to explain his reasons for rejecting' those complaints of pain." *Quintanilla v. Astrue*, No. 11-cv-1040, 2013 WL 4046371, at *17 (W.D. Tex. Aug. 8, 2013) (quoting *Falco*, 27 F.3d at 163–64). "When the record contains evidence that could support a claimant's allegations of disabling pain and the ALJ does not discuss this evidence before dismissing the complaint, the decision is not supported by substantial evidence." *Id.* (citing *Newton*, 209 F.3d at 459).

Here, the ALJ only references Plaintiff's subjective complaints of back pain once in the entire decision. (ECF No. 3-1 at 36). The ALJ states, "[a]t the hearing, the claimant testified he has slurred speech, memory issues, vertigo, back pain, and right sided weakness." (*Id.*). However, the ALJ finds,

16

> [a]fter careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however,
> the claimant's statements concerning the intensity, persistence
> and limiting effects of these symptoms are not entirely consistent
> with the medical evidence and other evidence in the record for the
> reasons explained in this decision. The medical evidence of record
> supports the presence of conditions that could reasonably be
> expected to cause some of the symptoms that the claimant alleges,
> but not to the full extent to which they allege them. Therefore, the
> undersigned finds the claimant's subjective complaints to be
> partially inconsistent with the evidence of record.

(*Id.*). The ALJ came to this conclusion without a discussion of the relevant evidence in the record regarding Plaintiff's back pain and without an explanation on how she came to this conclusion regarding Plaintiff's back pain. *See Quintanilla*, 2013 WL 4046371, at *18 ("Instead, he merely rejected, without discussion, any allegations of pain that were inconsistent with the RFC assessment."). Although the ALJ determined Plaintiff's subjective complaints of back pain are inconsistent with record evidence, the ALJ does not address or cite to the inconsistent record evidence. (*See* ECF No. 3-1 at 35–40).

Contrary to the ALJ's findings, there is record evidence supporting Plaintiff's complaints of back pain. For instance, the record shows Plaintiff has been treated for back pain since at least October 2018. (ECF No. 3-1 at 790). Gregory Krynski and Dr. Klein explain in progress notes that Plaintiff was "under [a] pain management program[,]" "[t]he pain is described as sharp,

stabbing with radiation into both legs to his posterior thighs[,]" and "[t]he severity of the pain is 8/10 average, continuous and is aggravated by lifting and movement." (*Id.* at 703, 705, 707, 710, 712, 715, 718, 721, 724, 727, 730, 733, 736, 739, 742, 745, 748, 751, 754, 757, 759, 761, 763, 765, 767, 769). Further, it was noted that "an MRI (magnetic resonance imaging), of the lumbar spine show multiple levels of disc protrusion and foraminal stenosis." (*Id.*). On December 17, 2018, Dr. Robles found "[e]vidence of posterior broad-based 3.5mm. disc protrusion" and "a moderate bilateral foraminal stenosis with minimal encroachment of the root nerve" at L2-3 and "[e]vidence of 3mm. central disc protrusion, indents the ventral thecal sac.[,] [m]ild facet degenerative changes[,]" and "[p]resence of mild bilateral foraminal stenosis with no impingement of the root nerve" at L4-5. (ECF No. 3-2 at 264–65). On July 31, 2023, Dr. Andrew Jones found Plaintiff's lumbar spine had paraspinal muscle tenderness and his assessment included lumbar muscle spasms, paresthesia, radiculopathy, chronic pain syndrome, lumbar spondylopathy, lumbar disc herniation, and lumbar degenerative disc disease. (*Id.* at 832). While the Commissioner argues there is evidence in the record to support the ALJ's decision, the ALJ does not cite to or address such evidence. (*See* ECF No. 9 at 8–9). The ALJ consistently cites to Exhibit 11F to show Plaintiff had normal strength in the upper and lower extremities. (*See* ECF No. 3-1 at 37).

18

However, Exhibit 11F also includes evidence of Plaintiff's back pain, his pain treatment, and his unsteady gait. (*See generally id.* at 703–769).

"[T]he record contains numerous indications that Plaintiff's complaints of disabling pain may have been credible, and the ALJ's failure to provide specific, articulable reasons for disregarding those complaints constitutes reversible error." *Quintanilla*, 2013 WL 4046371, at *18. While the ALJ may have been justified in finding that Plaintiff's complaints of pain were not meritorious, her decision was not supported by substantial evidence in the record. Accordingly, the Court recommends Commissioner's decision be vacated and this matter be remanded for additional findings regarding the Plaintiff's complaints of back pain.

## C.    RFC Assessment

Next, Plaintiff argues the RFC is not supported by substantial evidence and it fails to accommodate Plaintiff's impairments. (ECF No. 7 at 13–14). Specifically, Plaintiff argues the ALJ erred in failing to (1) accommodate for his back pain;[7] (2) accommodate for his residual deficits from the stroke; (3) accommodate for his mental limitations in the domains of interacting with others and adapting and managing oneself; (4) accommodate for his use of a

---

[7] The Court has found the ALJ's decision regarding Plaintiff's back pain was not supported by substantial evidence in the record. As such, the Court will not address this argument.

cane when ambulating; (5) accommodate for his visual impairments; (6) support the RFC finding with a medical source opinion of record; and (7) present a complete hypothetical question to the VE concerning Plaintiff's ability to perform work in the national economy. (*Id.* at 14–20). The Commissioner counters that the ALJ's RFC determination is supported by substantial evidence. (ECF No. 9 at 9).

"An individual's RFC 'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" *Martha L. v. Saul*, No. 1:20-cv-00003, 2021 WL 3610316, at *3 (N.D. Tex. July 27, 2021), *report and recommendation adopted*, No. 1:20-cv-003, 2021 WL 3604082 (N.D. Tex. Aug. 13, 2021) (quoting SSR 96-8p, 1996 WL 374184, at *1, *3–*5 (S.S.A. July 1, 1996)). The determination of RFC is solely the ALJ's responsibility, *see Taylor*, 706 F.3d at 602–03, and the ALJ considers all relevant medical and other evidence in making the RFC determination, *see* 20 C.F.R. § 404.1545(a)(3); SSR 96–5, 1996 WL 374183, at *5. "The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence." *Thornhill v. Colvin*, No. 3:14-cv-335, 2015 WL 232844, at *8 (N.D. Tex. Jan. 16, 2015). However, the ALJ is not required to incorporate limitations in the

RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

### 1.    Residual Deficits from the Stroke

Plaintiff argues the ALJ fails to identify which "residual deficits" Plaintiff suffers from; and thus, Plaintiff cannot determine whether such residual deficits were properly accommodated for in the RFC. (ECF No. 7 at 14–15). The Commissioner does not address this argument. (*See* ECF No. 9). However, in making this argument, Plaintiff provides no case law or authority. (*See* ECF No. 7 at 14–15). As such, the Court finds this argument is inadequately briefed and will not address it. *See Liggins v. City of Duncanville, Tex.*, No. 3:20-cv-0654, 2021 WL 929105, at *10 n.8 (N.D. Tex. Mar. 11, 2021) ("Plaintiff, however, does not subsequently develop these arguments or provide additional factual or case-law support. Thus, the Court does not address these additional assertions.").

### 2.    Mental Limitations

Plaintiff argues the ALJ erred in not accommodating for Plaintiff's mental limitations in the domains of interacting with others and adapting and managing oneself. (ECF No. 7 at 15). The Commissioner maintains the ALJ accounted for all of Plaintiff's mental limitations. (ECF No. 9 at 11).

"Even when an ALJ finds that a claimant's mental impairments are non-severe, the ALJ must still consider the impact of [any] non-severe

impairments—either singly or in combination with other conditions—when he determines [his] RFC." *Martha L.*, 2021 WL 3610316, at *4 (quoting *Gonzales v. Colvin*, No. 3:15-cv-0685, 2016 WL 107843, at *5 (N.D. Tex. Jan. 11, 2016) (quotations omitted)). "Courts within this district have found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Id.* at *5; *see Gonzales*, 2016 WL 107843, at *6, *8 (holding "the ALJ adequately discussed and considered the limiting effects of [Plaintiff's] mental impairments in formulating his RFC" when the ALJ's RFC analysis considered relevant mental health records, reports, and plaintiff's testimony regarding his mental impairments); *Danny R. C. v. Berryhill*, No. 3:17-cv-1682, 2018 WL 4409795, at *15–16 (N.D. Tex. Sep. 17, 2018) (finding no legal error where the ALJ declined to include mental limitations in plaintiff's RFC because the ALJ's "decision reflect[ed] that he considered Plaintiff's mental functioning when performing his RFC analysis.").

Before determining Plaintiff's RFC, the ALJ determined Plaintiff has a mild limitation in the domain of interacting with others and a moderate limitation in the domain of adapting and managing oneself. (ECF No. 3-1 at 34–35). In the RFC, the ALJ further discussed Plaintiff's mental limitations. For instance, the ALJ considers Plaintiff's subjective complaints where he

alleges he has "difficulty with hygiene, and has low motivation. He has his family help him with meals and chores around the house. He watches TV, but needs reminders to perform tasks at home." (*Id.* at 36). The ALJ also states,

> With regard to the claimant's mental limitations, the record shows the claimant has a diagnosis of anxiety, depression, and bipolar disorder. He does not receive regular treatment for these impairments. However, the claimant had a Consultative examination in May of 2021 with psychologist Dennis Feldman, Ph.D. (Exhibit 5F). He was given the Wechsler Adult Intelligence Scale test and scored a full-scale IQ score of 72, which is within borderline range (Exhibit 5F-4). Upon examination, the claimant exhibited normal conversational pace, sporadic eye contact, logical thought processes, but his thought content was positive for ruminations about health. His abstract reasoning skills were moderately impaired, and his memory was intact (Exhibit 5F-6). His attention and concentration were measured in the borderline range of ability on verbally presented information. His insight and judgment were both intact and his affect was congruent to his mood (Exhibit 5F-6, 7). He was diagnosed with mild depression and borderline intellectual functioning.

(*Id.* at 38). The ALJ provided an analysis of the opinions of Dr. Dennis Feldman ("Dr. Feldman"), Dr. Megan Nicoloff ("Dr. Nicoloff"), Dr. John Wolfe ("Dr. Wolfe"), Dr. Veronica Bedeau ("Dr. Bedeau"), and Dr. Alison Caviness ("Dr. Caviness") regarding Plaintiff's mental impairments. (*Id.* at 38–39). Further, the ALJ's analysis includes evidence specifically relating to the domains of interacting with others and a moderate limitation in the domain of adapting and managing oneself. For example, the ALJ states, Dr. Nicoloff and Dr. Wolfe "both opined the claimant can understand, remember, and carry out simple instructions, make simple decisions, attend, and concentrate for

extended periods, interact adequately with coworkers and supervisors, and respond appropriately to changes in a routine work setting" but that "the undesigned finds additional limitations are supported by the Consultative examination, such as the claimant's ability to adapt to workplace changes and the pace at which he can perform tasks." (*Id.* at 39).

Accordingly, the ALJ properly accommodated for Plaintiff's mental limitations in the domains of interacting with others and adapting and managing oneself in the RFC. *See Danny R. C.*, 2018 WL 4409795, at *15 ("Because the ALJ sufficiently considered [Plaintiff's] mental impairments in calculating the RFC, [he] did not err by not including any mental limitations in the RFC." (quotations and citation omitted)).

### 3. Use of a Cane

Plaintiff contends the RFC finding fails to accommodate for Plaintiff's use of a cane when ambulating. (ECF No. 7 at 15). The Commissioner argues the ALJ accounted for Plaintiff's use of a cane and determined the cane was not medically necessary according to record evidence. (ECF No. 9 at 11).

"Case law emphasizes that ALJs have no duty to incorporate a Plaintiff's use of a non-medically necessary cane into the RFC assessment." *Moore v. Saul*, No. 3:20-cv-48, 2021 WL 909618, at *3 (S.D. Miss. Feb. 1, 2021), *report and recommendation adopted as modified*, No. 3:20-cv-48, 2021 WL 754833 (S.D. Miss. Feb. 26, 2021) (citing *McGowan v. Colvin*, 2016 WL 4250433 at *6

(S.D. Miss. Aug. 11, 2016) ("[B]ecause a claimant lacked a prescription for a cane, no imagery to support claimant's need for a cane, and claimant obtained the cane from a family member, the ALJ's decision was supported by substantial evidence.")); *see also Johnson v. Berryhill*, No. 3:15-cv-3961, 2017 WL 1105720, at * 11 (N.D. Tex. Mar. 24, 2017) ("While Plaintiff's use of a cane is sporadically mentioned in the medical records, none of the records state that it was medically necessary, and they instead simply note that she brought her own cane with her to the evaluations.").

Here, the ALJ notes "the use of the cane seems not to be medically necessary as there is no documented need and [Plaintiff] himself indicates there was no prescription provided for the cane.  Moreover, the evidence of record shows generally normal exam results regarding gait, ambulation, and muscle strength."  (ECF No. 3-1 at 36, 78).  The ALJ also notes Plaintiff's use of a cane decreased over time.  (*See id.* at 37 ("He reported he was using the cane less as time went on.  For example, in February of 2023, the claimant reported he was using his cane less and was working out regularly (Exhibit 17F-12, 16).  By July of 2023, the claimant did not appear with the cane (Exhibit 17F-8).")).  Because Plaintiff is not prescribed a cane and due to the record evidence the ALJ cites to support her decision regarding the use of a cane, Plaintiff failed to meet his burden in showing he required a cane to

ambulate and substantial evidence in the record supports the ALJ's decision to exclude use of a cane in the RFC.  *See Johnson*, 2017 WL 1105720.

### 4.    Visual Impairments

Plaintiff argues the ALJ's RFC assessment is void of any accommodation for his severe visual impairments.  (ECF No. 7 at 16).  The Commissioner states the "record does not support Plaintiff's claim that the ALJ should have included visual limitations in the RFC."  (ECF No. 9 at 11).

"Finding impairments severe at Step Two 'does not mandate additional limitations in the RFC.'"  *Linward Charles M. v. Kijakazi*, No. 3:21-cv-2300, 2022 WL 17182077, at *3 (N.D. Tex. Nov. 22, 2022) (quoting *Winston v. Berryhill*, No. 3:16-cv-419, 2017 WL 1196861, at *12–14 (N.D. Tex. Mar. 31, 2017)).  "'The ALJ must clearly consider the severe impairments in determining the claimant's RFC, not necessarily assess limitations for each severe impairment.'"  *Id.* (quoting *Winston*, 2017 WL 1196861, at *13).  "Keeping in mind the differences between a Step Two severity finding and the RFC assessment, an ALJ 'does not err solely because [he or] she finds an impairment "severe" at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC.'"  *Id.* (quoting *Sarah B. v. Berryhill*, No. 1:17-cv-80, 2018 WL 3763837, at *9 (N.D. Tex. June 29, 2018)).

Here, the ALJ determined Plaintiff's vision disorder is a severe impairment at Step Two.  (ECF No. 3-1 at 33).  In the ALJ's RFC assessment,

the ALJ acknowledges Plaintiff has a history of cataracts and decreased vision. (*Id.* at 36).  The ALJ notes, Plaintiff "has exhibited decreased vision with 20/70 vision in both eyes without correction (Exhibit 4F).  He had an eye examination in June of 2021 that revealed age related cataracts.  The examiner noted the claimant needed glasses.  His visual field was normal (Exhibit 6F-3)."  (*Id.* at 38).  The ALJ also refers to Dr. Kirkwood's examinations of Plaintiff in which Dr. Kirkwood "noted the claimant had 20/70 visual acuity in both eyes without corrective lenses" and that "[t]he examiner did not see any effect of clouding in the eyes."  (*Id.*).

Accordingly, the ALJ properly accommodated for Plaintiff's vision impairments in determining Plaintiff's RFC, and Plaintiff has referred to no objective medical evidence showing his visual impairment reduced his RFC below what the ALJ found.  *See Linward Charles M.*, 2022 WL 17182077, at *4.

### 5.    Medical Source Opinion of Record

Plaintiff argues the ALJ's RFC finding is not supported by any medical source opinion of record and that the ALJ erred in interpreting the record medical evidence.  (ECF No. 7 at 16).

"While assessment of RFC is reserved for the agency, the Fifth Circuit has clarified that the ALJ should consider a medical source opinion in arriving at his conclusions."  *Woods v. Barnhart*, No. 3:08-cv-491, 2011 WL 2709869, at

*4 (S.D. Miss. June 24, 2011), *report and recommendation adopted*, No. 3:08-cv-491, 2011 WL 2728320 (S.D. Miss. July 12, 2011) (citing *Ripley v. Chater*, 67 F.3d 552, 557 n. 23 (5th Cir. 1995)).

> A "medical source statement" describing types of work that an applicant is still capable of performing, "based on the medical source's findings," may come from a treating physician, a consultative physician or from a non-examining "state agency medical and psychological consultants and other program physicians," who make determinations based on a review of plaintiff's medical records.

*Id.* (quoting 20 C.F.R § 404.1513).

Here, the ALJ considered evidence of Plaintiff's physical and mental impairments from several medical sources and referenced numerous medical records in assessing Plaintiff's RFC. Dr. Kirkwood completed two consultative examinations of Plaintiff regarding his physical and mental limitations. (ECF No. 3-1 at 37–38). Dr. Feldman completed a consultative examination with respect to Plaintiff's mental limitations. (*Id.* at 38–39). However, the ALJ assigned no specific degree of persuasion or weight to these opinions because a specific function by function assessment of Plaintiff's abilities related to work activities was not provided. (*Id.*). The ALJ did note that these opinions were taken into account in determining the RFC and are not inconsistent with the RFC. (*Id.*). Although the ALJ noted these medical sources did not explain Plaintiff's abilities related to work activities, the ALJ found the opinions of state agency psychologists Dr. Nicoloff and Dr. Wolfe and state agency

28

physicians Dr. Bedeau and Dr. Caviness somewhat persuasive. (*Id.* at 39).  For instance, the RFC assessment states, "[t]he State Agency physicians, Dr. Veronica Bedeau and Dr. Alison Caviness, both opined the claimant can perform a light range of work with limitations on his standing and walking to four hours out of an eight-hour workday, in addition to postural, communicative, and environmental limitations (Exhibits 1A, 4A)." (*Id.*).  There is not a complete lack of medical source opinion of record that the ALJ relied upon in determining the RFC.

Accordingly, Plaintiff's argument that the ALJ's RFC finding is not supported by any medical source opinion of record and that the ALJ erred in interpreting the record medical evidence fails.

### 6.    Hypothetical Question

Finally, Plaintiff argues "[b]ecause the ALJ fails to include all of Plaintiff's limitations in her RFC finding, even those specifically acknowledged in the ALJ's decision, the ALJ also failed to present a complete hypothetical question to the vocational expert concerning Plaintiff's ability to perform other work in the national economy." (ECF No. 7 at 19).  However, the only impairment the ALJ did not adequately consider is Plaintiff's back pain.  As such, upon remand, this issue will be addressed.

## IV. Conclusion

Based on the foregoing, the Court **RECOMMENDS** Commissioner's Motion for Summary Judgment (ECF No. 9) be **DENIED IN PART** as to the ALJ's evaluation of Plaintiff's back pain and **GRANTED IN PART** as to the remaining arguments and Plaintiff's Motion for Summary Judgment (ECF No. 7) be **GRANTED IN PART** as to ALJ's evaluation of Plaintiff's back pain and **DENIED IN PART** as to the remaining arguments. The Court **FURTHER RECOMMENDS** the case be **REMANDED** for further administrative proceedings, consistent with this opinion.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on August 8, 2025.

Richard W. Bennett
United States Magistrate Judge

30